IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEITH ADER,

        Plaintiff,                    No. 2:12-cv-00710 GEB KJN PS

        v.

BELIMED, INC, a Florida Corporation,
and DOES 1-20, Inclusive,

        Defendants.             <u>ORDER and FINDINGS AND</u>
                                            <u>RECOMMENDATIONS</u>
_____/

        Presently before the court is defendant's motion to dismiss this diversity jurisdiction case for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), on the grounds that the amount in controversy does not exceed $75,000.[1] Defendant moves, in the alternative, to transfer this case to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice.

        This matter came before the court on its August 2, 2012 civil law and motion calendar. Attorney Robert M. Anderson appeared via telephone on behalf of defendant.

---

[1] This case proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

Plaintiff, who is proceeding without counsel, appeared via telephone and represented himself.

The undersigned has fully considered the parties' briefs, the parties' oral arguments, and appropriate portions of the record. For the reasons that follow, the undersigned recommends that defendant's motion to dismiss for lack of subject matter jurisdiction be denied. However, the undersigned recommends that this case be transferred to the U.S. District Court for the District of South Carolina pursuant to 28 U.S.C. § 1404(a).

I. BACKGROUND

Plaintiff's complaint in this case, which concerns plaintiff's employment with and termination by defendant, did not originally allege a basis for this court's subject matter jurisdiction, but the Civil Cover Sheet asserted subject matter jurisdiction based on the diversity jurisdiction statute, 28 U.S.C. § 1332(a). (Civil Cover Sheet, Dkt. No. 1, Doc. 1-1; see also Anderson Decl. ¶ 3.) After defendant filed a motion to dismiss the complaint for lack of subject matter jurisdiction and, alternatively, to transfer the case to the District of South Carolina, plaintiff filed his First Amended Complaint (Dkt. No. 11) as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Defendant subsequently withdrew its original motion to dismiss or transfer and filed a similar motion addressed to the First Amended Complaint, which is before the court.

Before turning to plaintiff's allegations, the undersigned addresses a threshold argument made by defendant. Plaintiff represents that he added claims for wrongful termination and breach of contract to his First Amended Complaint "after [he] found that grounds existed to pursue them." (Pl.'s Opp'n ¶ 1, Dkt. No. 15.) Defendant argues that plaintiff's newly raised claims should not be considered by this court because they "appear" to have been fabricated to raise the amount in controversy above the jurisdictional threshold. (See Pl.'s Mot. to Dismiss/Transfer at 1 n.1, 7-8, 10, 11 n.7; Pl's Reply Br. at 5-6.) But defendant has not argued any legal basis for the court to disregard such claims added through an amendment as a matter of course, and where the First Amended Complaint supersedes the original complaint. Moreover,

defendant's counsel retreated from this argument at the hearing and conceded that he lacked legal authority for defendant's argument in this regard. Accordingly, defendant's argument about the alleged fabrication of claims is not well-taken on the record presently before the court, and the court considers plaintiff's wrongful termination and breach of contract claims here.

Turning to plaintiff's First Amended Complaint, plaintiff alleges that this court can exercise diversity jurisdiction over his claims. (First Am. Compl. ¶ 1.) Plaintiff does not allege his state of citizenship in the First Amended Complaint, but his declaration filed in connection with defendant's motion represents under penalty of perjury that plaintiff "was a resident of the State of Utah from approximately June of 2001 until approximately July of 2010," and that he "became a resident of Arizona in approximately July of 2010." (Ader Decl. ¶¶ 3-4.) Plaintiff alleges that defendant is a Florida corporation with its principal place of business in South Carolina, and that defendant is authorized to do business in California, including Placer County, as a foreign corporation. (First Am. Compl. ¶ 14; see also Carr Decl. ¶ 14 (declaring that defendant's principal place of business is in Charleston, South Carolina).) He further alleges that the amount in controversy "exceeds, exclusive of costs and interest, seventy-five thousand dollars." (First Am. Compl. ¶ 1.)

Defendant's "primary business is the manufacture and sale of infection control equipment and software to the healthcare and pharmaceutical industry, and the provision of service maintenance of its equipment to its customers." (Carr Decl. ¶ 3.) Plaintiff alleges that he is a former, non-exempt employee of defendant and was "employed to do work in various capacities in the State of California." (First Am. Compl. ¶¶ 17-18.) Plaintiff declares that he was employed by defendant from June 21, 2009, to July 29, 2010. (Ader Decl. ¶ 6.) Plaintiff declares that he interviewed for his field service technician position in Los Angeles, California, and that he was offered a job to work in Los Angeles. (See Ader Decl. ¶¶ 7-9.) Defendant's agents later asked plaintiff if plaintiff would consider working in "Northern California," and the parties came to an arrangement where plaintiff would reside in Utah and fly to California for

3

work. (Id. ¶ 10.) Plaintiff asserts that he performed the majority of his work in "Northern California," with "some work performed in Colorado, Utah, New Mexico, Arizona, Nevada, Michigan, and South Carolina." (Id. ¶ 12.) At the hearing, plaintiff clarified that his work in Northern California included work within the Eastern, Northern, and Central Districts of California. Plaintiff also attended training in South Carolina. (See id. ¶ 13.) Over the course of his employment, plaintiff maintained two residences to accommodate his work-related travel, in Utah and Arizona, and ultimately moved his whole family to Arizona. (See id. ¶¶ 17, 25.)

Plaintiff was terminated by defendant. Plaintiff alleges that he had entered into an "oral contract" with his manager regarding the use of a rental vehicle to assist plaintiff's move to Arizona to accommodate his work, which was for defendant's benefit. (First Am. Compl. ¶ 26; Ader Decl. ¶¶ 16, 20-22.) However, defendant allegedly relied on plaintiff's use of the rental vehicle and alleged financial reporting irregularities regarding a work-related airfare upgrade as "grounds for disciplinary action" that apparently consisted of termination from employment for cause. (See First Am. Compl. ¶¶ 27-29; Ader Decl. ¶¶ 23-24, 26-31.)

Plaintiff alleges several claims against defendant, which are all alleged pursuant to California law and are tied to plaintiff's employment and termination by defendant.[2] First, plaintiff alleges a claim for unpaid overtime wages pursuant to California Labor Code ("Labor Code") §§ 510, 1194, and 1198, and an Industrial Welfare Commission ("ICW") Wage Order. (See First Am. Compl. ¶¶ 4, 19, 30-37.) Second, plaintiff alleges a claim for unpaid wages premised on defendant's failure to provide meal breaks in accordance with Labor Code § 226.7, associated regulations, and an ICW Wage Order. (See First Am. Compl. ¶¶ 5, 20, 38-44.) Plaintiff's third and fourth claims for relief allege that defendant failed to maintain and provide

---

[2] As noted at the hearing, plaintiff's factual allegations regarding unpaid overtime and meal periods, wrongful and retaliatory termination on the basis of a mental condition, and a failure to accommodate his mental condition arguably raise colorable claims under the federal Fair Labor Standards Act, Title VII of the Civil Rights Act, and the Americans with Disabilities Act. Plaintiff clarified at the hearing, however, that he consciously chose not to allege claims pursuant to these federal statutes, which would have provided this court with federal question jurisdiction.

4

plaintiff with accurate pay and commission records in violation of various provisions of the Labor Code. (See First Am. Compl. ¶¶ 8, 22, 45-55.) Fifth, plaintiff alleges a claim pursuant to Labor Code §§ 201-203, and 227.3, premised on defendant's failure to timely pay unpaid wages and commissions upon termination. (See First Am. Compl. ¶¶ 6-7, 21, 23, 56-60.) Sixth, plaintiff seeks equitable and injunctive relief pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq., for restitution of unpaid wages, and to "enforce Labor Code penalties." (See First Am. Compl. ¶¶ 9, 61-73.)

Seventh, plaintiff alleges "a tort claim for wrongful termination in violation of public policy pursuant to California Government Code § 12940," claiming that he was harassed because of a mental disability and was fired in retaliation for raising the harassment with supervisory and management personnel. (See First Am. Compl. ¶ 10, 25.) Plaintiff alleges that he suffers from bipolar disorder and that as a result of this "mental disability," he belongs to a protected class. (See id. ¶¶ 24, 76; Ader Decl. ¶ 5.) He further alleges that throughout his employment with defendant, he was harassed by telephone and email by a co-worker, identified in a declaration as Melissa Carr. (See First Am. Compl. ¶¶ 25, 77; Ader Decl. ¶ 14.) Plaintiff alleges that he alerted his managers and Human Resources personnel about the harassment and resulting impact on his disability on multiple occasions, which amounted to a request for a reasonable accommodation of his disability. (See First Am. Compl. ¶ 78; Ader Decl. ¶¶ 13, 15, 19, 24.) Plaintiff alleges that he was terminated by Carr's immediate supervisor in retaliation for reporting the harassment. (First Am. Compl. ¶ 80; Ader Decl. ¶ 30.)

Eighth, plaintiff alleges claims for breach of contract premised on breaches of one oral contract and one implied-in-fact contract. (See First Am. Compl. ¶¶ 11, 26-29, 84-96.) The oral contract pertains to plaintiff's alleged agreement with a supervisor to permit plaintiff to rent a vehicle, the rental that ultimately led to plaintiff's discharge. Plaintiff derives the implied-in-fact contract from a "Standards of Conduct" policy provided to plaintiff upon his hiring, which provided that employees would only be terminated for cause.

In connection with his various claims, plaintiff seeks statutory damages and penalties under the Labor Code, compensatory damages, restitution, declaratory and injunctive relief, back pay, front pay, emotional distress damages, punitive damages, and attorney's fees, although plaintiff is appearing pro se. (See First Am. Compl. at 22-25.)

II. DISCUSSION

At the outset, the undersigned raises one unique aspect of the pending motions not raised by the parties. Contrary to the general rule that courts address the question of subject matter jurisdiction first, district courts have some discretion to decide the question of transfer of venue prior to addressing subject matter jurisdiction. See In re LimitNone, LLC, 551 F.3d 572, 577-78 (7th Cir. 2008) (per curiam) (holding that the district court did not err as a matter of law by resolving a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) prior to addressing subject matter jurisdiction, but cautioning that the holding "should not be read to suggest that district courts may in every case decide venue in advance of subject-matter jurisdiction without due consideration of whether it is advisable to do so"); see also Gibralter Trading Corp. v. PMC Specialists Group, Inc., --- F. Supp. 2d ---, No. 10 CV 3966(SJ)(MDG), 2011 WL 3625332, at *3-4 (E.D.N.Y. Aug. 16, 2011) (collecting cases).

Despite having discretion to address venue before subject matter jurisdiction, the undersigned addresses defendant's motion to dismiss for lack of subject matter jurisdiction first because the parties' dispute regarding the amount in controversy can be quickly resolved. In short, the undersigned concludes that at least for the purpose of evaluating subject matter jurisdiction, plaintiff has substantiated damages in excess of $75,000. In connection with his wrongful termination claim, plaintiff seeks back pay damages amounting to $104,000, which exceeds the jurisdictional minium. As stated below, however, the undersigned also concludes that this case should be transferred to the District of South Carolina.

////

////

A. Subject Matter Jurisdiction

Defendant's challenge to subject matter jurisdiction is a factual attack on the sufficiency of plaintiff's allegation that the amount in controversy exceeds $75,000. At the outset, the undersigned notes that defendant frames its argument in a manner that incorrectly suggests that plaintiff must establish a precise amount in controversy and prove, at the pleading stage, his entitlement to such damages on the merits. However, as plaintiff correctly argues, the "amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010).

A motion to dismiss challenging the court's subject matter jurisdiction can be either "facial" or "factual" in nature. See, e.g., White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "'In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). Where, as here, a defendant makes a factual challenge to the truth of plaintiff's allegations concerning the existence of federal subject matter jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039; accord White, 227 F.3d at 1242.

Although the parties argue at length whether plaintiff's requests for damages associated with all of his claims can be aggregated to exceed $75,000, plaintiff demonstrated that he has met the amount in controversy requirement with respect to his wrongful termination claim alone. Plaintiff's First Amended Complaint requests, among other things, damages in the form of back pay in connection with his wrongful termination claim, from July 29, 2010, to present. (See First Am. Compl. ¶ 83 & p. 24; see also Pl.'s Opp'n ¶ 27.) In his opposition brief, plaintiff

explains that he seeks two years of back pay at a rate of $25 per hour, which was plaintiff's rate of pay while employed by defendant. (Pl.'s Opp'n ¶ 35.) Plaintiff calculates his compensatory damages in the form of back pay as totaling $104,000. (Id.) Plaintiff's allegations and analysis satisfy the amount in controversy requirement.

Defendant's primary response to plaintiff's argument premised on back pay, from which defendant's counsel retreated at the hearing, is that plaintiff's wrongful termination claim was alleged for the first time in an amended complaint, with the implication that plaintiff fabricated this claim to create diversity jurisdiction. (Reply Br. at 5-6.) But as stated above, defendant offers no legal analysis or factual basis for the proposition that the court should not consider plaintiff's wrongful termination claim at this stage, where plaintiff added that claim as a matter of course and alleged myriad facts, including those supported by a declaration executed under penalty of perjury, regarding his alleged wrongful and retaliatory termination. Defendant's argument is not well-taken.

Defendant also argues, for the first time on reply, that plaintiff's wrongful termination claim should not be considered at all because plaintiff should have premised that claim on South Carolina law, not California law, and that therefore the wrongful termination claim is not viable. (See Reply Br. at 6.) Defendant contends that the employment relationship at issue was entered into and allegedly breached in South Carolina, and that, therefore, South Carolina law controls. (Id.) The undersigned finds defendant's argument unpersuasive for reasons that do not require the court to resolve the rather unclear question of which state's law ultimately governs plaintiff's wrongful termination claim. First, defendant's argument appears to be that plaintiff's claim should be dismissed because it fails to state a claim on which relief can be granted. But defendant has not moved to dismiss any of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Second, defendant's argument is unsupported by any legal authority or factual basis. In this regard, defendant provides no choice of law analysis and cites no legal authority supporting its argument that South Carolina law controls plaintiff's wrongful

termination claim. Without more from defendant, plaintiff has provided a good faith estimate of damages that exceeds the jurisdictional threshold. Accordingly, the undersigned recommends that defendant's motion to dismiss for lack of subject matter jurisdiction be denied.[3]

Although the undersigned concludes that an appropriately located federal district court can exercise subject matter jurisdiction over plaintiff's claims, the undersigned does not intend to absolutely bind the judges of the U.S. District Court for the District of South Carolina who might disagree with this conclusion. Assuming this case is transferred, the district court in South Carolina may, of course, revisit the question of subject matter jurisdiction.

B.  Transfer of Venue

In the alternative, defendant moves to transfer this case to the U.S. District Court for the District of South Carolina pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the undersigned recommends that the court grant defendant's motion.

Even if venue is proper in the district in which a plaintiff filed the action, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[4] 28 U.S.C. § 1404(a); see also Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (noting that the purpose of

---

[3] Although the undersigned concludes that subject matter jurisdiction is proper on the basis of plaintiff's wrongful termination claim, the undersigned notes that plaintiff would likely be entitled to conduct limited jurisdictional discovery as to several of his claims. In the Ninth Circuit, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Laub v. U.S. Dep't of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003) (citation and quotation marks omitted). "Although a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction, discovery should be granted when . . . the jurisdictional facts are contested or more facts are needed." Id. (citations and quotation marks omitted). Setting aside the wrongful termination claim, more jurisdictional facts would be needed to assess plaintiff's claims including his overtime and commission related claims.

[4] As noted by plaintiff, defendant does not challenge the propriety of venue in this district, which is proper under 28 U.S.C. § 1391(b)(2). (See Pl.'s Opp'n ¶ 41.) Additionally, aside from their now-resolved dispute concerning subject matter jurisdiction, the parties do not dispute that this case could have been filed in the District of South Carolina.

9

1  Section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants,
2  witnesses and the public against unnecessary inconvenience and expense) (citation and quotation
3  marks omitted). Transfer pursuant to section 1404(a) is committed to the discretion of the trial
4  judge exercised upon review of the individual facts of the particular case. See Stewart Org., Inc.,
5  Ricoh Corp, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the
6  district court to adjudicate motions for transfer according to an 'individualized, case-by-case
7  consideration of convenience and fairness.'") (citing Van Dusen, 376 U.S. at 622). In addition to
8  considering the convenience of the parties, the convenience of the witnesses, and the interests of
9  justice, the district court may consider several factors in evaluating such a discretionary transfer,
10 including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). The party seeking a transfer pursuant to Section 1404(a) bears the burden to justify the transfer on the basis of convenience and the interests of justice. See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

In moving to transfer this case, defendant primarily relies on the location of the relevant documents and key witnesses, and defendant has filed declarations in support of its arguments. In terms of documents, defendant argues that "[a]ll of the records maintained by Belimed with respect to wages earned by and paid to plaintiff are maintained and kept at its corporate headquarters in Charleston, South Carolina." (Def.'s Memo. of P. & A. In Supp. of Motion to Dismiss/Transfer ("Def.'s Memo.") at 12 (citing Carr Decl. ¶ 13).) Similarly, defendant argues that all records pertaining to commissions earned by or paid to plaintiff are

located at the same corporate headquarters. (Id. (citing Carr Decl ¶ 13).) Additionally, defendant represents that all records relating to plaintiff's employment, including plaintiff's complaints made to management and Human Resources personnel, are maintained at defendant's corporate headquarters in Charleston, South Carolina. (Id. (citing Scheffer Decl ¶ 4).) Plaintiff does not dispute these facts, but argues that documents are portable and, therefore, the location of the documents is of little value. (Pl.'s Opp'n ¶ 55.) Although the undersigned agrees with plaintiff that the documents at issue are likely portable, the location of documents is still entitled to some, albeit limited, weight in the venue analysis.

In regards to the witnesses in this case, the parties have identified several key witnesses, and their filings reveal additional witnesses. First, defendant identifies Erin Scheffer, who is defendant's current Manager of its Human Resources Department. (Def.'s Memo. at 12; see also Scheffer Decl. ¶ 3.) Scheffer resides in Charleston County, South Carolina. (Scheffer Decl. ¶ 1.) Although Scheffer has only been employed by defendant since January 28, 2011, which was after plaintiff was terminated by defendant, Scheffer declares that she is "familiar with the processing of records for Belimend's field service technicians, the payment of overtime and commissions to Belimend's field service technicians, and the employment records maintained and kept by Belimed with respect to its field service technicians." (Id. ¶¶ 1, 3.)

Second, defendant identifies Amy Bradley as a key witness. (Def.'s Memo. at 12.) Bradley, who resides in Charleston County, South Carolina, was Scheffer's predecessor and served as the Manager of defendant's Human Resources Department from February 5, 2007, through July 1, 2011. (Bradley Decl. ¶ 1.) Bradley declares that in her role as human resources manager, she was responsible for "dealing with and facilitating the making of reasonable accommodations for employees with disabilities and addressing and dealing with any complaints by employees of harassment or discrimination." (Id. ¶ 3.) For his part, plaintiff declares that Bradley confirmed with plaintiff the terms of plaintiff's offer of employment; that plaintiff spoke to Bradley multiple times in South Carolina during plaintiff's training and disclosed his bipolar

11

disorder to Bradley; that no reasonable accommodation was made for him despite his disclosure of a mental disability; and that plaintiff and Bradley had conversations about plaintiff's termination wherein, among other things, Bradley denied plaintiff the ability to file a grievance about his termination and denied plaintiff's request for copies of emails that plaintiff had sent to a management employee about Melissa Carr's harassment of plaintiff. (Ader Decl. ¶¶ 11, 13, 30.)

In addition to residing in South Carolina, Bradley declares that she has a cancerous brain tumor and is currently undergoing chemotherapy that is scheduled to last for at least another four months. (Bradley Decl. ¶ 5.) Bradley believes that being away from home for any appreciable length of time would create a health risk and, therefore, "it would be extremely inconvenient and totally impracticable for [her] to travel to another state to testify in court or for the taking of [her] deposition." (Id.)

Third, defendant identifies Melissa Carr, who has been defendant's Contracts Administrator since June 2007, and was in that role when plaintiff was employed by defendant. (Def.'s Memo. at 12; Carr Decl. ¶ 1.) Carr resides in Charleston County, South Carolina. (Carr Decl. ¶ 1.) Carr declares that in her capacity as Contracts Administrator, she is responsible for processing all time cards submitted by field service technicians. (Id. ¶ 4.) She further declares that she is familiar with defendant's policy and practice regarding the payment of overtime for field service technicians. (Id. ¶ 5.) Carr also declares that she is "responsible for determining the commissions payable to field service technicians in connection with the sale or renewal of a service contract with a Belimed customer." (Id. ¶ 6.) Accordingly, Carr's conduct is at the heart of plaintiff's overtime and commissions based claims.

Plaintiff necessarily ascribes great importance to Carr as a witness. Plaintiff declares that Carr is the co-worker who constantly harassed him by telephone and email and thereby sent plaintiff into manic states that affected his work. (Ader Decl. ¶¶ 14, 23.) Plaintiff further declares that Carr conducted the audit of plaintiff's financial reporting, and that during the

audit Carr "intensified the harassment and began to make very accusatory statements about [plaintiff's] financial reporting." (Id. ¶ 23.) This audit is allegedly what led to plaintiff's termination, which in turn "triggered a severe manic depressive episode" and "extended . . . and intensified the manifestations of [plaintiff's] mental disability." (Id. ¶¶ 31.) Accordingly, Carr's conduct is at the heart of plaintiff's wrongful termination claim.

Fourth, plaintiff identifies Tim Jalonen and Sherman Kelly as potential witnesses. Plaintiff represents that Jalonen was initially plaintiff's manager and is a resident of Washington State.[5] (Pl.'s Opp'n ¶ 56; Ader Decl. ¶ 15.) Plaintiff represents that Kelly became his manager after Jalonen and is a resident of California.[6] (Pl.'s Opp'n ¶ 56; Ader Decl. ¶ 15.) Plaintiff argues that he advised both Jalonen and Kelly of Carr's harassing behavior and that "[b]oth of them also authorized and approved Plaintiffs [*sic*] schedule and time cards, they signed off on Plaintiffs [*sic*] termination, and Mr. Jalonen was the one who made the agreements with Plaintiff concerning the move to Arizona." (Pl.'s Opp'n ¶ 56; see also Ader Decl. ¶¶ 6, 15-16, 20-22, 24, 26-28.)

Fifth, plaintiff identifies Rommel Ong as a witness. (Pl.'s Opp'n ¶ 57.) Plaintiff represents, with no supporting declaration, that Ong is a current Belimed employee who lives in the Los Angeles area of California.[7] (Id.) Plaintiff contends that Ong is currently defendant's Service Manager in the Los Angeles area and that Ong's "testimony would concern the pay practices of the Defendant, the amount of work performed in California, the number of machines and customers [defendant] has in California, along with the income and cost associated with

---

[5] Defendant's counsel represented at the hearing that it was his understanding that Jalonen resides in Washington.

[6] Defendant's counsel represented at the hearing that it was his understanding that Kelly resides in California.

[7] Plaintiff's declaration states that Ong was the employee hired to work in the Los Angeles territory just before plaintiff was hired, and that defendant's hiring of Ong led to the change in territory with respect to plaintiff's employment. (Ader Decl. ¶ 10.)

13

doing business there." (Id.) Ong's proposed testimony, unsupported by any declarations, appears to be of little relevance to this case. In terms of defendant's "pay practices," Ong's testimony would seemingly be of a general nature given that there are no representations that Ong was involved in the calculation of overtime wages, commissions, or other wages, or that Ong has any personal knowledge the events that gave rise to plaintiff's claims. Accordingly, Ong's proposed testimony is not of much value in the venue analysis.

Sixth, plaintiff identifies Michelle Ross as a witness. (Pl.'s Opp'n ¶ 57.) Ross is plaintiff's girlfriend, who resides in Phoenix, Arizona. (Ross Decl. ¶¶ 1, 16.) Plaintiff argues that Ross overheard some of plaintiff's work-related conversations, which plaintiff conducted by speaker phone. (Pl.'s Opp'n ¶ 57; see also Ader Decl. ¶¶ 29-30; Ross Decl. ¶¶ 25-26.) Although plaintiff does not raise this fact in his opposition brief, Ross also witnessed plaintiff's termination. (Ross Decl. ¶ 23.) Setting aside whether Ross's testimony about the phone calls would be admissible at trial, her corroborative testimony is of less value than the other witnesses identified above.

Seventh, plaintiff's declaration reveals that defendant's Chief Executive Officer and President, Joe McDonald, would be a key witness in regards to plaintiff's wrongful termination claim. Among other things, plaintiff declares that when he was terminated, Jalonen and Kelly advised plaintiff that plaintiff had been an exceptional employee and that they appreciated plaintiff's work and sacrifices, but that "the decision had come from Joe McDonald." (Ader Decl. ¶ 27; accord id. ¶ 28.) Additionally, plaintiff declares that he called Joe McDonald just after being terminated by Jalonen and Kelly, and that "Joe McDonald said he knew nothing about what had happened," was completely unaware that plaintiff had been terminated, and that "he would look into the matter and get back to [plaintiff] in the next couple of days." (Id. ¶ 29.) Defendant's counsel represented at the hearing that McDonald resides in South Carolina.

Eighth, plaintiff's declaration reveals that Pete Koste, defendant's Director of Technical Services while plaintiff was employed by defendant, would be a significant witness.

14

Plaintiff declares that Koste negotiated the terms of plaintiff's offer of employment. (Ader Decl. ¶ 10.) He further declares that he sent Koste at least one email about Carr's harassment of plaintiff, which was the basis for the retaliatory firing of plaintiff, and that Koste was on the phone call where Bradley denied plaintiff the opportunity to file a grievance about his termination. (Id. ¶¶ 23, 30.) Although it is unclear where Koste resides, defendant's counsel stated at the hearing, albeit with cautious reservation, that he believed Koste resides in South Carolina.

In regards to the location of witnesses, the most critical witnesses reside in South Carolina. Moreover, discovery might actually be more convenient and cost-effective for plaintiff were this case transferred in that plaintiff could consolidate his trips to South Carolina for depositions and hearings.

Defendant also notes that any alleged wrongdoing pertaining to defendant's failure to pay wages, failure to pay commissions, and wrongful termination of plaintiff actually occurred in South Carolina. (Def.'s Memo. at 12-13; Carr Decl. ¶ 14.) Although plaintiff performed some work in California that gave rise to some of plaintiff's claims, plaintiff's claims largely concern the failures of human resources personnel in calculating wages and commissions. Moreover, plaintiff's termination was not effectuated in California. Thus, defendant's argument about the location of the alleged wrongdoing has some persuasive value.

Plaintiff argues that his choice of forum favors of not transferring this case. (Pl.'s Opp'n ¶ 42.) Plaintiff is correct that "great weight is generally accorded plaintiff's choice of forum." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). However, as plaintiff acknowledges, less weight is given to a plaintiff's choice of forum when the plaintiff is not a resident of the forum, although primarily to discourage forum shopping. See, e.g., Roling v. E*Trade Sec., LLC, 756 F. Supp. 2d 1179, 1186-87 (N.D. Cal. 2010). While there is no suggestion of forum shopping here, plaintiff is not a resident, and has never been a resident, of California. Moreover, although plaintiff performed work in California that forms the basis for

much of his claims, plaintiff's claims are also premised on work performed in Colorado, Utah, New Mexico, Arizona, Nevada, Michigan, and South Carolina. For example, plaintiff declares that he performed substantial work in Arizona and complains of not being paid commissions in regards to sales made in Phoenix, Arizona, and Las Vegas, Nevada. (See Pl.'s Opp'n ¶ 16; Ader Decl. ¶ 16; see also Carr Suppl. Decl. ¶ 5.) Additionally, it is not at all clear from the First Amended Complaint and the various declarations filed with the court that plaintiff performed substantial work in the Eastern District of California; plaintiff simply alludes to performing work in "Northern California." At the hearing, plaintiff represented that he performed work in Sacramento, Antioch, San Jose, and San Francisco. Thus, the quality of plaintiff's contacts with California, and particularly this judicial district, are not of a quality deserving controlling weight. See Lou, 834 F.2d at 739 (stating that in judging the weight to be accorded a plaintiff's choice of forum, consideration must be given to the extent of the parties' contacts with the forum, including those relating to plaintiff's claims). The undersigned gives some, but not controlling, weight to plaintiff's choice of forum, but also discounts that choice on the quality of contacts with this district.

Additionally, plaintiff argues that this court should not transfer the case to the District of South Carolina because California has a significant interest in the outcome of this case. (See Pl.'s Opp'n ¶ 45.) Plaintiff's argument is minimally persuasive in light of the facts that plaintiff's claims are relatively straightforward, plaintiff's claims might turn on law other than California law, and plaintiff is not a resident or citizen of California.

Plaintiff further argues that this court would have more familiarity with California law than the U.S. District Court for the District of South Carolina. (See Pl.'s Opp'n ¶ 48.) This factor is neutral because the proposed transferee court would not have difficulty in ascertaining and applying California law to plaintiff's relatively straightforward claims.

Although not raised by the parties, it is somewhat telling that plaintiff requested leave to appear at the hearing on defendant's motions by telephone on the grounds that he lives in

Arizona and that making a personal appearance at the hearing would involve "significant time and expense" (Dkt. No. 18). Plaintiff's request suggests that California is an equally inconvenient forum for plaintiff.

On balance, defendant has met its burden to show that this case should be transferred to the District of South Carolina. In light of the location of the relevant documents and key witnesses, among other things, it readily appears that South Carolina is the center of gravity of this case and would be a more convenient forum. Accordingly, in the interests of justice, plaintiff's case should be transferred to the U.S. District Court for the District of South Carolina.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 13) be denied.

2. Defendant's alternative motion to transfer venue be granted.

3. This case be transferred to the United States District Court for the District of South Carolina.

In light of the above-stated recommendations, IT IS HEREBY ORDERED that the status (pretrial scheduling) conference presently set for August 30, 2012, is VACATED. If necessary, the court will reset the date of that scheduling conference.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. E. Dist. Local Rule 304(d).

Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED and RECOMMENDED.

DATED: August 3, 2012

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE